[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 5, 2006
THOMAS K. KAHN
CLERK

No. 06-12430
Non-Argument Calendar

D. C. Docket No. 05-22927-CV-DLG

LESLIE MIEDEMA
individually and on behalf of all others
similiarly situated,

                              Plaintiff-Appellee,

versus

MAYTAG CORPORATION,

                              Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

**(June 5, 2006)**

Before CARNES, WILSON and PRYOR, Circuit Judges.

WILSON, Circuit Judge:

    We previously accepted Defendant-Appellant Maytag Corporation's petition



PLAINTIFF'S EXHIBIT "E"

for permission to appeal, pursuant to the Class Action Fairness Act ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in scattered sections of 28 U.S.C.), from the district court's order granting Plaintiff-Appellee Leslie Miedema's motion to remand for lack of subject matter jurisdiction. On appeal, Maytag contends that the district court erred by placing the burden of proving subject matter jurisdiction on Maytag and resolving all doubts in favor of remand. Maytag further objects that, even if it did have this burden, the district court applied too high a standard of proof with respect to CAFA's amount in controversy requirement. Finally, Maytag claims that the district court erroneously relied upon a post-removal amended complaint in reaching its decision. After careful review of the record and the briefs, we affirm the judgment of the district court.

## I. BACKGROUND

In October of 2005, Leslie Miedema filed a class action suit against Maytag in Florida state court, alleging that various "ranges/ovens" designed and manufactured by Maytag contained a defective motorized door latch assembly that allowed heat to escape and damage other range/oven components. Specifically, Miedema pleaded that she brought her action "on behalf of herself and all other similarly situated consumers of [Maytag] ranges/ovens that incorporate the defective motorized door latch assembly, as a statewide class action, pursuant to

Fla. R. Civ. P. 1.220(b)(2) or (b)(3)." She included in the putative class "[a]ll purchasers of Maytag ranges/ovens, in the State of Florida, bearing [certain model numbers]," and stated her belief that there were "thousands of members of the above-described class." Miedema asserted causes of action for negligence, breach of express warranty, and violation of Florida's Deceptive and Unfair Trade Practices Act, demanding "compensatory damages, [] pre- and post-judgment interest, costs, and any and all such further relief to which she is entitled."

Within a month of being served with Miedema's complaint, Maytag filed a notice of removal in federal district court, invoking 28 U.S.C. §§ 1332, 1441, 1446, and 1453. According to Maytag, the class action was removable under CAFA because Miedema and Maytag were of diverse citizenship, the putative class consisted of thousands of Floridians, and the amount in controversy exceeded, in the aggregate, $5,000,000. *See* 28 U.S.C. §§ 1332(d), 1453(a), (b). In support of its claim regarding the amount in controversy, Maytag submitted a declaration by its information analyst Jodi Jarrett. Jarrett declared that she had researched those range/oven models identified in Miedema's description of the putative class, that a total of 6,729 ranges/ovens bearing the alleged model numbers had been sold in Florida, and that the total value of those ranges/ovens was $5,931,971.

3

Miedema responded by moving to remand for lack of subject matter jurisdiction. She argued that Maytag had the burden of establishing subject matter jurisdiction by a preponderance of the evidence, and that Maytag had failed to carry that burden with respect to the amount in controversy. For example, Miedema stated, Jarrett's declaration did not specify whether each of the 6,729 ranges/ovens sold incorporated the allegedly defective motorized door latch assembly at issue, what Maytag meant by "total value," or how that "total value" was calculated. Maytag opposed the motion to remand, arguing, among other things, that any vagueness in its determination of the amount in controversy was due to the breadth of Miedema's complaint. The district court, noting the existence of disagreement among courts as to which party bears the burden of establishing subject matter jurisdiction under CAFA, ordered additional briefing on the issue, as well as on whether the requisite amount in controversy had been established. Miedema then proceeded to depose Jodi Jarrett, and submitted this deposition as additional evidence of Maytag's failure to establish that more than $5,000,000 was in controversy.

After receiving the parties' additional submissions, the district court issued an order granting Miedema's motion to remand for lack of subject matter

jurisdiction.[1] The district court adhered to the traditional rule in the CAFA context that a removing defendant bears the burden of establishing subject matter jurisdiction. The court then determined that Maytag did not satisfy that burden, finding that the Jarrett declaration and deposition were "flawed" in this regard. Although Miedema also contributed to the uncertainty surrounding the amount in controversy, the court noted, it must ultimately resolve all doubts in favor of remand. We granted Maytag's subsequent petition for permission to appeal the remand order, see 28 U.S.C. § 1453(c), and now reach the merits of that appeal.

## II. STANDARD OF REVIEW

We review de novo the district court's decision to remand for lack of subject matter jurisdiction. *Evans v. Walter Indus., Inc.*, 11th Cir. 2006, __ F.3d __, slip op. at 2275 (No. 06-11974, May 22, 2006); see 28 U.S.C. § 1453(c)(1) (notwithstanding 28 U.S.C. § 1447(d), court of appeals may review remand order where case was removed under CAFA).

## III. DISCUSSION

### A. CAFA Review of Remand Orders

#### 1. 7-Day Application Rule

The CAFA permits a court of appeals to accept an application to appeal if

---

[1] The district court's order also denied all other pending motions as moot and administratively closed the case.

the application is made to the court of appeals *"not less than* 7 days after entry of the [district court's] order" granting or denying a motion to remand a class action to the state court from which it was removed. 28 U.S.C. § 1453(c)(1) (emphasis added). Several circuits have declined to read the "not less than" language literally, concluding that it was a typographical error, or that such a reading would be illogical. *S ee Pritchett v. Office Depot, Inc.* 420 F.3d 1090, 1093 n.2 (10th Cir. 2005) ("The statute should read that an appeal is permissible if filed 'not more than' seven days after entry of the remand order."); *Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Servs., Inc.*, 435 F.3d 1140, 1146 (9th Cir. 2006) (following *Pritchett* and also excluding, in calculating the 7-day period, intermediate weekends and holidays under Fed. R. App. P. 26(a)(2)); *cf. Patterson v. Dean Morris, L.L.P.*, 444 F.3d 365, 368 n.1 (5th Cir. 2006). While we have not addressed this issue directly, it is clear that we did not read § 1453(c)(1) literally in *Evans*, where we stated that § 1453(c)(1) "provides for an 'application' to the court of appeals . . . *within* 7 days of the district court's remand order." *Evans*, __ F.3d at __, slip op. at 2275 (emphasis added). We now reaffirm that construction of § 1453(c)(1), for to read it literally would produce an absurd result: there would be a front-end waiting period (an application filed 6 days after entry of a remand order would be premature), but there would be no back-end limit (an application filed

6

600 days after entry of a remand order would not be untimely). When applying the plain and ordinary meaning of statutory language "produces a result that is not just unwise but is clearly absurd, another principle comes into the picture. That principle is the venerable one that statutory language should not be applied literally if doing so would produce an absurd result." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1188 (11th Cir. 1997). Here, the district court's remand order was entered on April 4, 2006. Maytag filed its petition for permission to appeal (i.e., its "application") with the circuit clerk on April 12, 2006–six days later, when the intervening weekend is excluded under Fed. R. App. P. 26(a)(2). Accordingly, there was no violation of § 1453(c)(1) when we granted Maytag's petition.

### 2. 60-Day Review Limit

The CAFA requires us to "complete all action on [this] appeal, including rendering judgment, not later than 60 days after the date on which such appeal was filed, unless an extension is granted . . . ." 28 U.S.C. § 1453(c)(2).[2] In granting Maytag's petition for permission to appeal, we directed the parties to address the question of "whether the sixty-day period is measured from the date the petition is filed, or instead is measured from the date of entry of this order." *Evans*, however,

---

[2] If a final judgment on the appeal is not issued before the end of the 60-day period, plus any extension of that period under § 1453(c)(3), then "the appeal shall be denied." 28 U.S.C. § 1453(c)(4).

has now decided that issue, holding that "the 60-day period begins to run from the date when the court of appeals granted the appellants' application to appeal and thus filed the appeal." __ F.3d at __, slip op. at 2275. We granted Maytag's petition for permission to appeal on April 25, 2006. Thus, so long as our ruling on this appeal is issued within 60 days of that date (assuming no extension is granted), our ruling is timely.

### B. Burden of Establishing Subject Matter Jurisdiction

The CAFA authorizes removal of a "class action" in accordance with 28 U.S.C. § 1446,[3] "without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." 28 U.S.C. § 1453(b). A "class action" includes a civil action which, like Miedema's, is filed under a "State . . . rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id.* § 1332(d)(1). "Under CAFA, federal courts [] have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states)." *Evans*, __ F.3d at __, slip

---

[3] The one-year limitation in § 1446(b), however, does not apply. 28 U.S.C. § 1453(b).

op. at 2276 (citing 28 U.S.C. § 1332(d)(2)).[4]

Maytag contends that the district court, in evaluating Miedema's motion to remand, erred by applying the traditional rule that the removing defendant bears the burden of establishing subject matter jurisdiction. Maytag concedes "[t]he text of CAFA does not address which party has the burden of proof in establishing federal jurisdiction when a class action is removed to federal court," but argues the legislative history expresses a clear intent to require that an objecting plaintiff demonstrate removal was improvident, i.e., that all applicable jurisdictional requirements were *not* met. Specifically, Maytag points to language in the Senate Committee Report:

> If a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional requirements are not satisfied). And if a federal court is uncertain about whether "all matters in controversy" in a purported class action "do not in the aggregate exceed the sum or value of $5,000,000," the court should err in favor of exercising jurisdiction over the case.

S. Rep. No. 109-14, at 42 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 40; *see also* 151 Cong. Rec. H723, H727 (2005) (statement of Rep. Sensenbrenner) ("If a

---

[4] While this grant of jurisdiction does not apply to a class action in which "the number of members of all proposed plaintiff classes in the aggregate is less than 100," *see* 28 U.S.C. § 1332(d)(5)(B), there is no claim that this language describes the instant case. Indeed, the complaint and notice of removal both indicate that the putative class numbers in the thousands.

9

purported class action is removed under these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that removal was improper. And if a federal court is uncertain about whether the $5 million threshold is satisfied, the court should err in favor of exercising jurisdiction over the case."). Thus, Maytag concludes, the district court should have placed the burden on Miedema to prove that subject matter jurisdiction was lacking.

We disagree. The Seventh and Ninth Circuits have, in detailed opinions, rejected the very kind of argument Maytag now presents. *See Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 448 (7th Cir. 2005) (holding that CAFA's "naked legislative history" does not alter the well established rule that a proponent of subject matter jurisdiction bears the burden of persuasion on the amount in controversy); *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 686 (9th Cir. 2006) (per curiam) ("CAFA's silence, coupled with a sentence in a legislative committee report untethered to any statutory language, does not alter the longstanding rule that the party seeking federal jurisdiction on removal bears the burden of establishing that jurisdiction."). In *Evans*–which was decided after the instant case was fully briefed–this Circuit agreed with the Seventh and Ninth Circuits that "CAFA does not upset the traditional rule that the removing party bears the burden of proof with regard to establishing federal court jurisdiction." __ F.3d at __, slip

op. at 2278. Moreover, this Circuit previously explained that, "'[w]hile a committee report may ordinarily be used to interpret unclear language contained in a statute, a committee report cannot serve as an *independent statutory source having the force of law*.'" *United States v. Thigpen*, 4 F.3d 1573, 1577 (11th Cir. 1993) (en banc) (quoting *Int'l Bhd. of Elec. Workers Local Union No. 474 v. NLRB*, 814 F.2d 697, 712 (D.C. Cir. 1987)); *cf. Rural Electrification Admin. v Cent. La. Elec. Co.*, 354 F.2d 859, 865 (5th Cir. 1966) ("Certainly, the demands of Congressional Committees do not have the force of law."). Thus, "'courts have no authority to *enforce* principles gleaned *solely* from legislative history that has no statutory reference point.'" *Thigpen*, 4 F.3d at 1577 (quoting *Int'l Bhd. of Elec. Workers*, 814 F.2d at 712).[5]

For similar reasons, we also reject Maytag's argument, based on the legislative history described above, that the district court should have resolved any doubts about the amount in controversy in favor of finding jurisdiction. As with the burden of proof, CAFA itself is silent on the matter. The rule of construing removal statutes strictly and resolving doubts in favor of remand, however, is well-

---

[5] Maytag cites *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S. Ct. 2223, 2228, 41 L. Ed. 2d 1 (1974) ("Although the [Equal Pay] Act is silent on this point, its legislative history makes plain that the Secretary has the burden of proof on this issue, as both of the courts below recognized."). *Corning Glass Works*, however, does not actually stand for the proposition Maytag urges–that legislative history, coupled with statutory silence, is sufficient to *override* an *already existing*, well-established rule allocating the burden of proof to a removing defendant.

established. *See, e.g., Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S. Ct. 868, 872, 85 L. Ed. 1214 (1941) ("[T]he policy of the successive acts of Congress regulating the jurisdiction of federal courts is one calling for the strict construction of [removal statutes]."); *Syngenta Crop. Prot., Inc. v. Henson*, 537 U.S. 28, 32, 123 S. Ct. 366, 369, 154 L. Ed. 2d 368 (2002) ("[S]tatutory procedures for removal are to be strictly construed."); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[R]emoval statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."); *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("[A]ll doubts about jurisdiction should be resolved in favor of remand to state court."). Statements in CAFA's legislative history, standing alone, are a insufficient basis for departing from this well-established rule. *See Thigpen*, 4 F.3d at 1577; *cf. Abrego*, 443 F.3d at 686; *Brill*, 427 F.3d at 448.

Maytag contends that adherence to these well-established rules runs contrary to "one of the overriding purposes" of CAFA, which Maytag characterizes as "fix[ing] the flaw in 28 U.S.C. § 1332 and throw[ing] open the doors of the federal judiciary to defendants who are sued in state court class actions."[6] While the text

---

[6] In fact, § 2(b) of CAFA describes its purposes as follows: (1) "[to] assure fair and prompt recoveries for class members with legitimate claims; (2) "[to] restore the intent of the framers of the United States Constitution by providing for federal court consideration of interstate cases of national importance under diversity jurisdiction; and (3) "[to] benefit society

of CAFA plainly expands federal jurisdiction over class actions and facilitates their removal, "[w]e presume that Congress legislates against the backdrop of established principles of state and federal common law, and that when it wishes to deviate from deeply rooted principles, it will say so." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 900 (11th Cir. 2003); *see White v. Mercury Marine, Div. of Brunswick, Inc.*, 129 F.3d 1428, 1434-35 (11th Cir. 1997) ("Congress is assumed to act with the knowledge of existing law and interpretations when it passes new legislation."). For example, Congress inserted language into CAFA that clearly suspends the well-established rule of unanimity[7] for purposes of class action removals. *See* 28 U.S.C. § 1453(b) (stating that a class action "may be removed by any defendant without the consent of all defendants"); *Abrego Abrego*, 443 F.3d at 681 (noting that § 1453 overrides the judicially developed requirement that each defendant consent to removal). Likewise, Congress expressly imposed a special "rule of construction" on CAFA's provisions requiring that certain state and federal officials be notified of proposed class action settlements. *See* 28 U.S.C. § 1715(f) ("Nothing in this section shall be construed to expand the authority of, or

---

by encouraging innovation and lowering consumer prices." 28 U.S.C. § 1711 note.

[7] "The unanimity requirement mandates that in cases involving multiple defendants, all defendants must consent to removal." *Russell Corp. v. Am. Home Assur. Co.*, 264 F.3d 1040, 1044 (11th Cir. 2001) (citing *Chicago R. I. & P. Ry. Co v. Martin*, 178 U.S. 245, 247-48, 20 S. Ct. 854, 855, 44 L. Ed. 1055 (1900) (deriving from a removal statute the rule that all defendants must join in removal)).

impose any obligations, duties, or responsibilities upon, Federal or State officials."). Thus, Maytag's generalized appeals to CAFA's "overriding purpose" are unavailing in the face of CAFA's silence on the traditional, well-established rules that govern the placement of the burden of proof and the resolution of doubts in favor of remand.[8]

For the foregoing reasons, we conclude that the district court did not err by placing the burden of establishing subject matter jurisdiction on Maytag, or by invoking the rule that doubts are to be resolved in favor of remand.

### C.  Amount in Controversy

#### 1.  Standard of Proof

Maytag contends that, in order to satisfy its burden of proof with respect to the amount in controversy (minimal diversity is not in dispute), the district court erroneously required it to "prove with certainty" the following: (1) "how many of the ovens listed in [Miedema's] complaint were actually defective"; (2) "the

---

[8] Notably, the standards urged by Maytag would leave courts with lingering doubts about the existence of subject matter jurisdiction. The mere fact that a plaintiff failed to prove that subject matter jurisdiction did *not* exist, for example, would not necessarily mean that subject matter jurisdiction *did* exist. As a result, class actions could conceivably proceed through removal, an initial 28 U.S.C. § 1453(c) appeal, discovery, and perhaps even summary judgment or trial before it became apparent that subject matter jurisdiction was in fact lacking. Such a result is difficult to reconcile with CAFA's apparent concern for the swift resolution of disputes over federal jurisdiction, as evidenced by the 7-day and 60-day deadlines imposed by § 1453(c). *Cf. Brill*, 427 F.3d at 447 ("[I]t is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction.").

number of ovens located in Florida"; and (3) "the price that each Florida customer paid for their Maytag oven." Such a high standard of proof, Maytag argues, essentially renders it impossible for manufacturers to meet CAFA's amount in controversy requirement. The district court, however, did not purport to require that Maytag prove the requisite amount in controversy "with certainty." To the contrary, the district court properly invoked the rule that "[w]here, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a *preponderance of the evidence* that the amount in controversy exceeds the jurisdictional requirement." *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (emphasis added). To determine whether this standard is met, a court first examines whether "it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement." *Id.* As the district court recognized, it is not facially apparent from Miedema's complaint that the amount in controversy exceeds $5,000,000. *Cf. id.* at 1320 (generalized claims for various types of damages did not establish "that the amount in controversy more likely than not exceeds $75,000"). "If the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id.* at 1319. The district court likewise performed this inquiry, and

resolved the matter in favor of remand. Thus, Maytag's real dispute is not with the "standard of proof" per se, but the district court's assessment of the evidence.

### 2. Evidence

In order to establish the amount in controversy, Maytag's notice of removal relied upon Jodi Jarrett's declaration that "a total of 6,729 of the models of ranges/ovens identified in paragraph 22 of the Complaint were sold in Florida," and "[t]he total value of those ranges/ovens is $5,931,971." The district court identified several problems with these claims:

> Paragraph 21 of the complaint makes clear that Plaintiff is only pursuing relief "on behalf of herself and all other similarly situated consumers of Maytag ranges/ovens **that incorporate the defective motorized latch assembly**, as a statewide class action." (Emphasis added). Contrary to Defendant's contention, Plaintiff did not claim that all of the ranges/oven[s] of the models identified in paragraph 22 contained the defect. The affidavit attached to the Notice of Removal fails to confirm that each of the 6,729 units had the defective motorized door latch assembly. Instead, the affidavit only claims that "6,729 of the models of ranges/ovens identified in paragraph 22 of the Complaint were sold in Florida." Paragraph 22 of the complaint is a list of the model numbers at issue. Further, the affidavit fails to define what is meant by the "total value" of those ranges/ovens.

Maytag challenges this analysis, noting that paragraph 22 of Miedema's original complaint simply identifies the putative class as "[a]*ll* purchasers of Maytag ranges/ovens, in the State of Florida," that bear any of the listed model numbers. (emphasis added). When considered in conjunction with paragraph 21 of the

original complaint, Maytag argues, paragraph 22 necessarily implies that *every* range/oven which bears one of the listed model numbers and was purchased in Florida contains the motorized latch assembly alleged to be defective. The district court, Maytag suggests, must have confused paragraph 22 of Miedema's original complaint with paragraph 22 of her post-removal amended complaint, which identifies the putative class as "*all* purchasers of Maytag ranges/ovens, in the State of Florida, *which contain the allegedly defective motorized door latch assembly*" and bear any of the listed model numbers. (emphasis added). This new class definition would better support the district court's reasoning, but may not be considered for purposes of determining subject matter jurisdiction. *See Burns*, 31 F.3d at 1097 n.13 ("Jurisdictional facts are assessed on the basis of plaintiff's complaint *as of the time of removal*.");*Williams*, 269 F.3d at 1319 ("[A] district court may properly consider post-removal evidence in determining whether the jurisdictional amount was satisfied *at the time of removal*.") (emphasis added).

While we are not persuaded that the district court did in fact rely upon paragraph 22 of the post-removal amended complaint, we agree that, under the most logical reading of the original complaint, Miedema was alleging that all of the listed range/oven models sold in Florida contained the alleged defective motorized latch assembly. Thus, the district court should not have faulted Maytag for

"fail[ing] to confirm that each of the 6,729 units had the defective motorized door latch assembly." Notwithstanding this error, we agree with the district court that Maytag did not establish the requisite amount in controversy by a preponderance of the evidence.

As the district court pointed out, Jarrett's declaration offered no explanation as to how she arrived at the conclusion that the 6,729 range/oven units had a "total value" of $5,931,971. It appears from Jarrett's deposition that she was provided with the most recent manufacturer's suggested retail price ("MSRP") for each model type at issue, but it is unclear whether those MSRPs would in any way reflect the compensatory damages, interest, and costs that Miedema seeks. Furthermore, Jarrett's statement that 6,729 of the range/oven models at issue were "sold" in Florida is not based on actual sales data. As Jarrett's deposition reveals, that figure is merely a guess based on (1) Maytag's receipt of a total of 2,943 product registrations from Florida consumers for the range/oven models at issue, and (2) Maytag's estimate that, nationwide, only about 43.6% of the units it manufactures are registered by consumers. Even if we assume that this kind of estimation is reliable, it presumes that the rate of registration by Florida consumers closely parallels Maytag's national average.[9]

---

[9] The district court also found it significant that Maytag's calculation of the amount in controversy did not account for the effect of any applicable statutes of limitations. When

18

Given the particular facts and circumstances of the instant case, the district court did not err when it found that "great uncertainty" remained about the amount in controversy, resolved that uncertainty in favor of remand, and concluded that Maytag had not established, by a preponderance of the evidence, that the amount in controversy exceeded $5,000,000. Accordingly, remand for lack of subject matter jurisdiction was appropriate.

## IV. CONCLUSION

In resolving the issue of subject matter jurisdiction, the district court properly placed the burden of proof on the Maytag, the removing party, and did not err by applying the principle that doubts about jurisdiction are to be resolved in favor of remand. Furthermore, the district court did not err when it concluded Maytag had not established, by a preponderance of the evidence, that the amount in controversy exceeded $5,000,000, as required by CAFA. We therefore affirm the judgment of the district court.

Unless held by an active judge of this court, the mandate shall issue on June 22, 2006.

**AFFIRMED.**

---

determining the amount in controversy for jurisdictional purposes, however, courts cannot look past the complaint to the merits of a defense that has not yet been established. *See Johns-Manville Sales Corp. v. Mitchell Enters., Inc.*, 417 F.2d 129, 131(5th Cir. 1969) (although state statute of limitations might in fact bar plaintiff from recovering a sum sufficient to trigger the jurisdictional threshold,"this is a factual issue requiring an adjudication on the merits of this case," and the availability of the defense, even if apparent on the face of the complaint, "does not operate to deprive the federal court of jurisdiction").