IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEBRA BETTS,                    )
                                )
        Plaintiff,              )
                                )
v.                              )   CIVIL ACTION 06-0259-WS-B
                                )
ELI LILLY AND COMPANY, et al.,  )
                                )
        Defendants.             )

## ORDER

This matter is before the Court on the motion of defendant Eli Lilly and Company ("Lilly") to stay all proceedings, (Doc. 4), and on the plaintiff's motion to remand. (Doc. 14). The parties have submitted briefs and other materials in support of their respective positions, (Docs. 5, 15, 21, 22), and the motions are ripe for resolution. After carefully considering the foregoing, as well as other relevant materials in the file,[1] the Court concludes that the motion to stay is due to be denied and the motion to remand is due to be granted.

## BACKGROUND

This suit is one of hundreds brought against Lilly as the manufacturer of Zyprexa. The plaintiff sued Lilly in state court on several causes of action and also sued her treating physician for medical negligence. (Complaint at 8). Both the plaintiff and the physician are citizens of Alabama, but Lilly removed on the basis of diversity of citizenship, claiming that the physician was fraudulently joined and so could be ignored for purposes of showing complete diversity.

Multidistrict litigation concerning Zyprexa has been established in the Eastern District of New York, and Lilly intends to seek transfer of this case to the MDL Court. Lilly's motion requests a stay of all proceedings in this Court pending transfer, including the plaintiff's motion to remand.

---

[1] In particular, the Court has considered the notice of removal and appended complaint, (Doc. 1), the motion to dismiss filed by defendant John Richard Cranton, (Doc. 8), and the parties' briefs on the motion to dismiss. (Docs. 16, 20).



PLAINTIFF'S
EXHIBIT
"F"

## DISCUSSION

The parties agree that the Court has the authority to rule on a motion to remand whatever the likelihood that the MDL Panel will order transfer to the MDL Court. They differ as to whether the Court should exercise that authority or defer ruling by staying these proceedings pending transfer.

### I. Motion to Stay.

Lilly argues that a stay of proceedings without reaching the motion to remand "will promote judicial economy, avoid inconsistent rulings by different district courts and avoid prejudice to both plaintiff and defendant." (Doc. 5 at 7). District courts have routinely isolated these as the key considerations in whether to grant a stay pending transfer to an MDL court, including when a motion to remand is pending. The rub comes in the courts' varied ways of assessing and valuing these considerations. It would serve no good purpose to engage in a thorough review of the many opinions in this arena, both because most of them lack detailed analysis and because this Court has already adopted a standard for gauging motions to defer ruling on a pending motion to remand: "'[a] court should first give preliminary scrutiny to the merits of the motion to remand' and ..., 'if this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court.'" *Moton v. Bayer Corp.*, 2005 WL 1653731 at *2 (S.D. Ala. 2005)(quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wis. 2001)).[2]

The Court has adopted this portion of *Meyers* because it appears better calculated to vindicate the interests of judicial economy, consistency of result, and minimization of prejudice to the parties than a reflexive rule that automatically defers decision to an MDL court whenever

---

[2] Under *Meyers*, even when a jurisdictional issue is difficult, the transferor court should not automatically defer ruling but should first "determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceedings." 143 F. Supp. 2d at 1049. Because neither *Moton* nor this case presents a difficult jurisdictional issue, the Court need not decide whether it would adopt this second step of the *Meyers* approach.

it can be predicted that an issue at least superficially similar may arise in other transferred cases. Because the question is a recurring one, the Court pauses to amplify the reasons it gave in *Moton* for drawing this conclusion.

The economy of the transferor court presumably is always enhanced by deferring ruling on a motion to remand, since it takes no effort to do nothing. However, an accurate assessment of judicial economy requires consideration of the time and effort of all courts involved; a deferral that saves one court an hour's work but costs other courts several more is scarcely a conservator of judicial resources. The *Meyers* approach respects this economic fact. Because the result in a motion to remand captured by the first *Meyers* step is apparent on initial review, the transferor court's investment in resolving the motion is minimal or at least minor. All things being equal, the investment of the transferee court in deciding the same motion would be roughly equivalent, resulting in a neutral effect on judicial economy — scarcely an argument in favor of deferral. But in the MDL context there is always a third court involved: the MDL Panel. To defer ruling on a plainly meritorious motion to remand forces that body of seven judges (who have their own dockets in addition to the Panel's) to needlessly review and hear argument on requests for transfer, objections thereto, and post-transfer matters. Because the first step of *Meyers* assumes it is clear that the case must be remanded, every minute of time spent by the Panel on the case is wasted, guaranteeing that deferral results in a net loss of judicial economy.[3]

The only means possible to overcome the negative judicial economy created when a transferor court defers ruling on a clear motion to remand is to invoke the economies of scale. The idea is that, although it would be inefficient to transfer to an MDL court a single case with a motion to remand, it is efficient to transfer twenty such cases, because the MDL court can dispose of twenty motions to remand more efficiently than twenty courts can dispose of one motion to remand each.

The anticipated economies of scale, however, disappear when the motions to remand are straightforward and easily resolved. This follows from two related phenomena: first, in a simple

---

[3]This is true without considering the wasted efforts of clerks in three courts who must manage the flow of filings and physically ship what paper products remain in this electronic age.

case each transferor court will invest little time in resolving the issue (which provides a limited pool of potential savings from deferral); and second, the transferee court must of course review each case individually before reaching its conclusion (which drains the potential savings from deferral).[4] The Panel's investment in transferring twenty cases consumes whatever marginal savings remain. Judicial economy thus remains unimproved by even a large-scale transfer of cases with identical, plainly meritorious motions to remand.[5]

Implementing the first step of the *Meyers* approach imposes costs on the transferor court that should be considered in evaluating the net effect of the approach on judicial economy. The preliminary assessment required by *Meyers* naturally consumes judicial time. When the assessment confirms that the motion is due to be granted, the time spent performing it is recaptured without loss in the disposition of the motion. When, however, the assessment reflects that deferral is appropriate, the transferor court cannot directly recapture the time expended in making the assessment. Performing the assessment thus results in an arguable loss of judicial economy in such cases.

This incidental cost of following *Meyers*, however, does not warrant rejecting it. First, the cost does not reflect a true loss of judicial economy, any more than does a court's sua sponte examination of its subject matter jurisdiction which confirms the existence of such jurisdiction. In both situations, it is highly economical to scrutinize jurisdictional matters at an early stage,

---

[4]This (along with the increased risk of inconsistent results) explain why *Meyers* treats complicated motions to remand differently. When the analysis is difficult to develop or apply, each transferor court must expend significant resources to decide its motion to remand. The transferee court initially must do so as well but, once the analysis and its application are mastered, it can resolve additional motions to remand more efficiently than a transferor court starting from scratch.

[5]Truly identical motions to remand are perhaps more the exception than the rule. Defendants typically label motions to remand as "similar" if only they involve the same general challenge to jurisdiction — for example, amount in controversy or, as in this case, fraudulent joinder. But these broad labels often hide a welter of individual issues — as well as unique facts and varying bodies of controlling state law — that would require individual attention if left for the transferee court to decide. All such variations increase the time the transferee court must devote to each motion, exacerbating the inefficiencies of deferral when the outcome of an individual case is clear.

regardless of whether in a particular case that scrutiny discloses the presence or absence of jurisdiction.[6] Second, the amount of time required to perform a preliminary assessment is almost always measured in minutes and so cannot have a significant effect on overall judicial economy. Most importantly, the time so spent is dwarfed by the time that MDL courts and the Panel would waste were *Meyers* rejected so that transferor courts automatically deferred ruling on even obvious motions to remand.

With judicial economy eliminated as a justification for rejecting the *Meyers* approach, only the risk of inconsistent results and prejudice to the parties remain for consideration. Because the first step of *Meyers* contemplates that different judges will review similar motions to remand, it is of course possible they will reach different results. To the extent the motions are similar but not identical in terms of the facts presented, the law governing, and the arguments asserted, such disparity in result is neither surprising nor undesirable and would probably be mimicked by the transferee judge. But because *Meyers* contemplates that only obvious motions to remand will be decided by the transferor court, the possibility of inconsistent results on truly indistinguishable facts, law and argument is largely theoretical.[7] As for prejudice, no party has a right to remain in federal court when subject matter jurisdiction is plainly lacking, and a defendant caught by *Meyers* is thus not prejudiced in any meaningful sense by an early rather than late remand to state court.

Lilly proffers a fistful of ineffectual arguments why the Court should not reach the plaintiff's motion to remand. First, Lilly argues that "[t]he issue of fraudulent joinder ... is much more complex than a simple amount in controversy inquiry" as in *Meyers*, such that a preliminary assessment is inadequate to determine whether removal was improper. (Doc. 21 at 5). It is doubtlessly true that some fraudulent joinder issues are sufficiently intricate that a

---

[6] *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999)(because a court is powerless to act without jurisdiction, it "should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings.").

[7] *Accord Board of Trustees v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 903 (N.D. Ill. 2002) ("The threat of inconsistent judgments [under *Meyers*] is de minimus.").

preliminary assessment of them would not enable a court to reach a confident conclusion.[8] This Court, however, is not considering a hypothetical or even typical case, but rather the specific case pleaded by the plaintiff now before the Court. It is simply irrelevant whether different fraudulent joinder issues might be immune to resolution by preliminary assessment; the only question is whether *this* fraudulent joinder issue, presented by *this* defendant in *this* manner in *this* case, is susceptible of such a resolution. As discussed in Part II, it is.

Indeed, fraudulent joinder issues are particularly poor candidates for reflexive deferral. As noted in Part II, whether a resident defendant is fraudulently joined depends on the plaintiff's ability to establish a cause of action under state law, in this case the law of Alabama. A transferee court sitting elsewhere is not only unlikely to possess unusual familiarity with Alabama law but is likely to be less conversant with that law than a transferor court that regularly considers Alabama legal issues when it sits in diversity. In such cases, the transferee court will require more time than the transferor court to resolve the motion, because it must first acquaint itself with Alabama law the transferor court already knows, resulting in an additional tax on judicial economy. Moreover, the transferee court stands at a similar comparative disadvantage with respect to motions to remand involving the law of the remaining 50 or more local jurisdictions outside its own. It is thus unsurprising that courts have repeatedly cited the necessity of resort to local law as bolstering the case for deciding a motion to remand prior to transfer.[9]

Second, Lilly asserts that other MDL courts have addressed fraudulent joinder issues and

---

[8]This was the case in *Stempien v. Eli Lilly & Co.*, 2006 WL 1214836 (N.D. Cal. 2006), on which Lilly relies for its argument.

[9]*See Cordle v. Merck & Co.*, 405 F. Supp. 800, 803 n.4 (E.D. Ky. 2005); *Galati v. Eli Lilly & Co.*, 2005 WL 3533387 at *1 (W.D. Mo. 2005); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 679 (D. Nev. 2004); *In re: Massachusetts Diet Drug Litigation*, 338 F. Supp. 2d 198, 201 (D. Mass. 2004); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1054 (N.D. Cal. 2004); *Speaker v. Wyeth-Ayerst Laboratories*, 2003 WL 22938955 at *1 (N.D. Tex. 2003); *Morales v. American Home Products Corp.*, 214 F. Supp. 2d 723, 725 (S.D. Tex. 2002); *McQuilkin v. Ford Motor Co.*, 2001 WL 197840 at *1 (E.D. La. 2001); *Bellinder v. Microsoft Corp.*, 2000 WL 575021 at *2 (D. Kan. 2000); *Kohl v. American Home Products Corp.*, 78 F. Supp. 2d 885, 888 (W.D. Ark. 1999).

thereby "created a body of case law that provides valuable consistency and guidance for all involved," (Doc. 5 at 10), apparently to suggest that unusual efficiencies accompany deferral of such issues. There is of course no separate fraudulent joinder jurisprudence applicable only to MDL litigation and, at any rate, the Court is as able to apply principles emerging from MDL litigation as is a transferee court. To the extent Lilly in opposition to remand relies on fraudulent joinder cases decided in the MDL context, the Court in Part II reviews and distinguishes them.

Third, Lilly points out that plaintiff's counsel has filed a total of nine Zyprexa actions in Alabama, all including substantially similar allegations against a treating physician and all generating the same arguments from Lilly as to why the physicians were fraudulently joined. To further judicial economy and ensure consistency, Lilly argues, all nine motions to remand should be deferred to the MDL Court. (Doc. 5 at 14-15; Doc. 21 at 12-13). Because this is an easy case, however, as discussed above there is no economy or consistency to be gained by deferral. Indeed, by insisting that the nine rise or fall together, Lilly concedes that motions to remand in the other eight cases are as clear cut as the motion to remand in this one and so will neither consume significant resources of the transferor courts nor pose an appreciable risk of inconsistent results.[10]

Fourth, Lilly complains that it will be prejudiced if the Court remands this case but the MDL Court would not. (Doc. 21 at 14). Although couched in terms of prejudice, this is actually an attempt to revisit consistency. Because, as discussed in Part II and as contemplated by the *Meyers* test, the absence of subject matter jurisdiction is perfectly clear, there is no real risk of inconsistent results.

Next, Lilly insists that the MDL Court, the Panel, and another MDL court have all encouraged transferor courts to defer ruling on motions to remand. (Doc. 5 at 18; Doc. 21 at 2, 11-12). The Court, however, finds no such imprimatur. The Panel routinely issues a letter to transferor courts after a request for transfer has been received, which includes the following language:

> If you have a motion pending — such as a motion to remand to state

---

[10] Although unnecessary to the Court's conclusion, five of the nine cases are on its docket, cutting Lilly's argument in half before it begins.

-7-

> court (if the action was removed to your court) — you are free to rule on the motion, of course, or wait until the Panel has decided the transfer issue. The latter course may be especially appropriate if the motion raises questions likely to arise in other actions in the transferee court and, in the interest of uniformity, might best be decided there if the Panel orders centralization.

(Doc. 21, Exhibit A). By its terms, the Panel's invitation extends only to motions whose resolution by the transferor court threatens "the interest of uniformity" and, as discussed above, motions to remand captured by the first step of *Meyers* do not threaten that interest.

Judge Weinstein's suggestion, issued just after establishment of the Zyprexa MDL litigation in early 2004, is even more remote:

> The parties shall send a letter to the litigants in, and judges for, each of the state court cases indicating that this court intends to provide for coordinated discovery on the underlying scientific and related issues. The letter shall notify the addressees that they may wish to take appropriate action to coordinate or integrate discovery with that in this court. Appropriate action may include stays, stipulations to be bound by discovery in the MDL cases, stipulations to receive notice of any discovery in the MDL cases, and stipulations or orders to participate in any discovery in those cases.

(Doc. 5, Exhibit L). On its face, this letter suggests only a stay of state-court cases, not of removed cases and certainly not of removed cases harboring facially meritorious motions to remand.

The comments of the fen-phen MDL Court merit the closest attention:

> [W]e are continuing to address the fraudulent joinder of individual physicians and pharmacies as defendants as a means to prevent removal. Many of these issues have common patterns as well as ramifications far beyond any specific case. Again, we believe these issues are best resolved in a uniform manner through the coordinated proceedings of MDL 1203.

*Braden v. Wyeth*, U.S. Dist. LEXIS 28734 at *65-66 (N.D. Ala. 2004)(quoting *In re: Diet Drugs Product Liability Litigation*, MDL No. 1203, PTO-2984). Implicit in the MDL Court's statement are its extensive experience with such issues and the complexity of them. *See id.* at *65 ("We have now developed a broader perspective than is usually available to individual transferor courts in dealing with widespread efforts fraudulently to join Phentermine manufacturers as a tactic to thwart removal ...."). Complex remand motions, of course, lie beyond the first step of *Meyers* and so may well be fit for resolution by a transferee court, but this plaintiff's motion is anything but complex. Moreover, when as here the motion to remand is

-8-

simple, a transferee court's experience with such motions does not give it a significant advantage in deciding others of like simplicity. At any rate, Lilly has not identified any particular expertise of the MDL Court with respect to motions to remand centered on the fraudulent joinder vel non of a treating physician under Alabama or other law.

Finally, Lilly lists numerous transferor courts that have granted stays pending transfer in this and other MDL litigation. Many of the cases cited are inapposite because no motion to remand had been filed. Additional padding stems from Lilly's practice of citing multiple decisions by the same judge in the same MDL litigation as if they represented independent conclusions. These and other methodological flaws make it difficult to accept at face value Lilly's representation that the "overwhelming majority of courts" defer ruling on motions to remand. (Doc. 21 at 1).[11] Moreover, few of Lilly's cited cases involve issues of fraudulent joinder, certainly fewer than the decisions of which the Court is aware in which the transferor court addressed fraudulent joinder prior to transfer.[12] Finally, because most of the cited orders provide little or no information about the motion to remand or its complexity, they are not facially inconsistent with *Meyers*.

At any rate, the Court does not believe that its decision should be based on a simple tally

---

[11] The statement is certainly incorrect with respect to the three federal districts in Alabama, as the plaintiff has submitted recent unpublished orders from eleven district judges (excluding the undersigned) and three magistrate judges remanding cases that were awaiting transfer to an MDL court. (Doc. 15, Exhibit 1).

[12] *See, e.g., Hedges v. Pfizer, Inc.*, 2006 WL 1970545 at *3-6 (E.D. Ky. 2006); *Riddle v. Merck & Co.*, 2006 WL 1064070 at *1-2 (S.D. Ill. 2006); *Davis v. Ocwen Federal Bank*, 2006 WL 155241 at *2 n.11 (M.D. Ala. 2006); *Copeland v. Eli Lilly & Co.*, 2005 WL 3533394 at *1-2 (W.D. Mo. 2005); *Martin v. Merck & Co.*, 2005 WL 1984483 at *5-6 (E.D. Cal. 2005); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 679 (D. Nev. 2004); *In re: Massachusetts Diet Drug Litigation*, 338 F. Supp. 2d 198, 201 (D. Mass. 2004); *Speaker v. Wyeth-Ayerst Laboratories*, 2003 WL 22938955 at *1 (N.D. Tex. 2003); *Danos v. Bristol-Myers Squibb Co.*, 2003 WL 21056815 at *1-2 (E.D. La. 2003); *Shields v. Bridgestone/Firestone, Inc.*, 232 F. Supp. 2d 715, 718 (E.D. Tex. 2002); *Morales v. American Home Products Corp.*, 214 F. Supp. 2d 723, 725 (S.D. Tex. 2002); *Bellorin v. Bridgestone/Firestone, Inc.*, 236 F. Supp. 2d 670, 676 (W.D. Tex. 2001); *Carden v. Bridgestone/Firestone, Inc.*, 2000 WL 33520302 at *4 (S.D. Fla. 2000); *Bellinder v. Microsoft Corp.*, 2000 WL 575021 at *2 (D. Kan. 2000); *Kohl v. American Home Products Corp.*, 78 F. Supp. 2d 885, 888 (W.D. Ark. 1999).

of results in other cases.[13] More important to the Court is the strength of the reasoning employed to reach those results, and the orders relied on by Lilly that offer explanation for their rulings do little more than articulate the conclusion that the interests of judicial economy, consistency of result and minimization of prejudice to the parties will best be furthered by a stay. Suffice it to say that nothing to which Lilly has drawn the Court's attention undermines the Court's confidence in the *Meyers* approach and its application here.

In summary, Lilly's motion to stay — and thereby defer ruling on the plaintiff's motion to remand — is due to be denied.

## II. Motion to Remand.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "[T]he removing party has the burden of proving that ... there is no possibility the plaintiff can establish a cause of action against the resident defendant ...." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). The possibility of establishing a cause of action must be reasonable rather than merely theoretical. *Legg v. Wyeth*, 428 F.3d 1317, 1324, 1325 n.5 (11th Cir. 2005). In making its determination, the Court "must ... resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380

---

[13]If it did, the numbers would favor *Meyers*. At least twelve courts have embraced *Meyers*, and the only opinion known to have rejected it adopted instead an approach less favorable to removing defendants. *See Rutherford v. Merck & Co.*, 2006 WL 1064071 at *2 (S.D. Ill. 2006); *Martin v. Merck & Co.*, 2005 WL 1984483 at *1-2 (E.D. Cal. 2005); *Edsall v. Merck & Co.*, 2005 WL 1867730 at *3 (N.D. Cal. 2005)(Patel, J.); *Moton v. Bayer Corp.*, 2005 WL 1653731 at *2 (S.D. Ala. 2005); *Hotseller v. Pfizer, Inc.*, 2005 WL 756224 at *2 (S.D. Ind. 2005); *Wisconsin v. Abbott Laboratories*, 2004 WL 2055717 at *1 (W.D. Wis. 2004); *Brock v. Stolt-Nielsen SA*, 2004 WL 1837934 at *2 (N.D. Cal. 2004)(Smith, J.); *Nekritz v. Canary Capital Partners, LLC*, 2004 WL 1462035 at *2 (D.N.J. 2004); *Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1053-54 (N.D. Cal. 2004)(Armstrong, J.); *New Mexico State Investment Council v. Alexander*, 317 B.R. 440, 443-44 (D.N.M. 2004); *Chinn v. Belfer*, 2002 WL 31474189 at *3 (D. Or. 2002); *Board of Trustees v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 902-03 (N.D. Ill. 2002); *cf. Pennsylvania v. Tap Pharmaceutical Products, Inc.*, 415 F. Supp. 2d 516, 521 & n.3 (E.D. Pa. 2005)(rejecting *Meyers* in favor of an inflexible rule of addressing motions to remand prior to motions to stay).

(11th Cir. 1998).

Lilly offers three reasons why the Court should conclude that the treating physician was fraudulently joined: (1) the complaint does not satisfy the pleading requirements imposed on medical malpractice plaintiffs by Alabama statute; (2) the plaintiff's claim against the physician is negated by irreconcilable allegations she makes against Lilly; and (3) her allegations against the physician are conclusory, without accompanying factual detail. A preliminary assessment exposed these arguments' plain lack of merit, as discussed below.

### A. State Pleading Requirements.

> In any action for injury, damages, or wrongful death ... against a health care provider for breach of the standard of care, ... [t]he plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts. ... Any complaint which fails to include such detailed specification and factual description of each act and omission shall be subject to dismissal for failure to state a claim upon which relief may be granted.

Ala. Code § 6-5-551.

The complaint alleges that the plaintiff's physician prescribed Zyprexa "from approximately October 1996 to November 2004." (Complaint, ¶ 8). It alleges that the physician knew or should have known that possible side effects and dangers of Zyprexa include glucose intolerance, pancreatitis, hyperglycemia and diabetes, and it alleges further that he violated the applicable standard of care by failing to warn the plaintiff of these risks and failing to advise her to monitor for early signs of these conditions. (Id., ¶¶ 26-30).[14]

Lilly first argues that the complaint lacks "a detailed specification and factual description of each act and omission." (Doc. 1 at 11). As pointed out by the plaintiff, however, the Alabama Supreme Court has construed the quoted language as requiring the plaintiff to give "fair notice of the allegedly negligent act"; as long as fair notice is provided, "courts should

---

[14] In addition to failure to warn, the complaint alleges that the physician wrongfully prescribed Zyprexa. (Id.). Because a fraudulent joinder argument fails if it is reasonably possible that the plaintiff can establish any of her alleged causes of action, the Court confines its attention to the failure-to-warn claim, which is also the principal focus of Lilly's attack.

-11-

strive to find that the complaint includes the necessary 'detailed specification and factual description of each act and omission alleged.'" *Mikkelsen v. Salama*, 619 So. 2d 1382, 1384 (Ala. 1993). The third-party complaint in *Mikkelsen* alleged that the defendant's physician prescribed a medication for bipolar disorder but failed to warn her not to operate a motor vehicle while taking the medication or suffering from the disorder. *Id.* at 1384-85. The Supreme Court held that these simple allegations satisfied the pleading requirements of Section 6-5-551 for a claim of failure to warn. *Id.* at 1385. In light of the similarity of the allegations in *Mikkelsen* to those in this case, there is plainly more than a reasonable possibility that an Alabama court would find the plaintiff's allegations to satisfy the statute. Lilly, confronted with *Mikkelsen* in the motion to remand, has not attempted to disagree. (Doc. 22 at 8-9).

    The bulk of Lilly's thin statutory argument is dedicated to the proposition that the complaint fails to provide "the date, time, and place of the act or acts." In the first place, the obligation to address time and location applies to acts, not omissions, and the plaintiff's claim of failure to warn concerns an omission, not an act. The Alabama Legislature plainly understood the difference between acts and omissions, since Section 6-5-551 uses the term "act or omission" three times, such that its use of "act or acts" cannot easily be disregarded as unintended or inconsequential. Limiting the requirement to acts also makes sense because, while an act usually occurs at a specific site and at a specific time that can be readily identified, an omission is almost always ongoing and not easily described in terms of a specific time and location.

    In the second place, Section 6-5-551 requires that information as to time and place be provided only "when feasible and ascertainable." Because a failure to warn is an ongoing wrong, providing such specifics may not be feasible. The physician (but not Lilly) suggests that it would be feasible to identify the dates on which he prescribed Zyprexa, (Doc. 20 at 3), but prescribing medication, while an "act" and not an omission, is not obviously an act "alleged by plaintiff to render the health care provider liable" for purposes of her failure-to-warn claim. At any rate, neither the physician nor Lilly provides any basis for concluding either that the plaintiff had access to this information before filing suit or that the information was "ascertainable"

-12-

within the contemplation of the statute even absent such access.[15]

In the third place, Section 6-5-551 limits the grounds for dismissal to the failure to provide "such detailed specification and factual description of each act and omission." A comparison of this language with that setting forth the statutory pleading requirements suggests that the sanction of dismissal is available only for inadequately identifying and describing the wrongful act or omission, not for deficiencies in pleading time or place.

The Court need not and does not hold that Section 6-5-551 is as narrow as depicted in the preceding paragraphs; to dispose of Lilly's fraudulent joinder argument, the Court need only determine that it is reasonably possible the Alabama courts would adopt at least one of these three interpretations. Given their facial plausibility, their consistency with the statutory language employed, and the Supreme Court's focus in *Mikkelsen* on fair notice rather than technical precision, that reasonable possibility plainly exists.

The result is not altered even if these arguments are ignored and it is assumed that the plaintiff was required on pain of dismissal to allege the time and place of the physician's failure to warn. The third-party complaint in *Mikkelsen* alleged that the physician's failure to warn occurred "[w]hile [he was] treating" the defendant, which treatment began several weeks before the motor vehicle accident that prompted the lawsuit. 619 So. 2d at 1385. Without discussion, the *Mikkelsen* Court held that the complaint "sufficiently alleged the date and place of [the doctor's] negligent act." *Id.* Lilly argues that *Mikkelsen* stands for the proposition that, while an allegation of time in a failure-to-warn case need not identify specific dates, it must isolate a narrow window of time, such as the "several weeks" at issue in *Mikkelsen*. (Doc. 22 at 9). This is certainly one plausible way to spin *Mikkelsen*, but it is not the only one. It is equally reasonable to read *Mikkelsen* for the proposition that, in a failure-to-warn case, Section 6-5-551 is satisfied by an allegation that the failure to warn occurred throughout the treatment period, with the inclusive dates of treatment provided. The reasonableness of this interpretation is only enhanced by the *Mikkelsen* Court's identification of "fair notice" as the touchstone for

---

[15]The physician's "assum[ption]" that the plaintiff acquired her medical records before filing suit, (*id.*), is scarcely an assurance that she did so. Indeed, his ignorance of whether she obtained medical records of which he is presumably the custodian indicates that she did not have access to them when she filed suit.

construing the statute's pleading requirements. Because it is reasonably possible that the Alabama courts would adopt the latter view, and because the complaint's allegation that the physician prescribed the plaintiff Zyprexa from approximately October 1996 to November 2004 falls within its parameters, Lilly's fraudulent joinder argument fails.[16]

### B. Mutually Exclusive Allegations.

Count Seven, which asserts a claim of fraud, misrepresentation and suppression against Lilly, alleges in part as follows:

> The Defendants [sic] knew or should have known that these representations were false and made the representations with the intent or purpose that the Plaintiff and/or Plaintiff's physician would rely on them, leading to the use of the drug by the Plaintiff.

(Complaint, ¶.72). Drawing from this assertion, Lilly argues that "[t]he allegations that Lilly failed to provide accurate representations regarding the safety of Zyprexa to Plaintiff's physician render untenable any allegation that [the treating physician] is liable to Plaintiff for ... negligently monitoring and informing Plaintiff." (Doc. 1 at 12; Doc. 22 at 6). Lilly cites several cases which found fraudulent joinder when a claim that a physician failed to warn of risks in the use of a prescribed medication was contradicted by allegations that the manufacturer failed to disclose those risks to the physician; the latter allegations made it impossible for the plaintiff to establish a claim because a physician has no duty to warn of dangers of which he could not have known.[17]   Assuming without deciding that the same test should be applied here, it does not undermine the plaintiff's claim against her physician. The critical circumstance in the

---

[16] *Mikkelsen* held that the third-party complaint adequately alleged the place of the wrongful conduct even though the pleading was silent as to where the conduct occurred. 619 So. 2d at 1384-85. Lilly makes no separate argument concerning the pleading of place but, in any event, *Mikkelsen* establishes a reasonable possibility that the Alabama courts would conclude that the plaintiff's complaint is not deficient in this regard.

[17] See *Flores v. Merck & Co.*, 2004 U.S. Dist. LEXIS 28017 at *2 (S.D. Tex. 2004); *In re: Baycol Products Litigation*, 2004 U.S. Dist. LEXIS 28068 at *5 (D. Minn. 2003); *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759, 763 (S.D.W. Va. 2003); *Omobude v. Merck & Co.*, 2003 U.S. Dist. LEXIS 27006 at *4 (S.D. Miss. 2003); *Brown v. Bristol-Myers Squibb Co.*, 2002 U.S. Dist. LEXIS 27445 at *17 (S.D. Miss. 2002).

cases upon which Lilly relies is that the complaint identified no source of information available to the physician other than the manufacturer. When the allegations of such a complaint negate the manufacturer as a source of information about the drug's risks, it follows that the physician could not have known of the risks he failed to address. The situation is entirely different when the complaint alleges that the physician knew or should have known of the drug's dangers from other sources, and Lilly's own authority acknowledges that "a specific allegation as to the source of such knowledge" takes the case outside the scope of the rule. *Omobude v. Merck & Co.*, 2003 U.S. Dist. LEXIS 27006 at *6-7 (S.D. Miss. 2003).

Here, the complaint lists and discusses a number of studies and reports in the medical literature, as well as governmental and health organizational advisories, appearing as early as 1996 and continuing through the 2005 Physician's Desk Reference. According to the descriptions provided in the complaint, these documents support and even warn of a link between Zyprexa (and the family of atypical antipsychotic drugs to which it belongs) and diabetes, pancreatitis and hyperglycemia. (Complaint, ¶¶ 14-23). Because it contains "a specific allegation as to the source [other than the manufacturer] of" the physician's actual or constructive awareness of the risks of which he failed to warn, the complaint does not negate the existence of a duty to warn.

### C. Conclusory Allegations.

"Although the Fifth Circuit has not drawn a bright-line distinction between a reasonable possibility and a theoretical one, it has held that, when plaintiffs make general allegations and fail to support them with specific, underlying facts, they have not established a reasonable basis for the Court to predict that relief may be granted." *Staples v. Merck & Co.*, 270 F. Supp. 2d 833, 837 (N.D. Tex. 2003). Lilly argues that the plaintiff's failure-to-warn claim makes only general allegations without specific underlying facts and thus lacks a reasonable possibility of success under this principle. (Doc. 1 at 9-10).

Assuming without deciding that application of the quoted rule is appropriate,[18] it does not

---

[18] It is not clear that the Fifth Circuit has in fact embraced the quoted rule. The *Staples* Court cited two cases for the proposition, but neither seems to support the expansive sweep

aid Lilly's case. Lilly argues the allegation that the physician "knew or should have known that the drug was unreasonably dangerous and/or would cause injury to Plaintiff" is conclusory but, as discussed in Part II.B, the complaint specifies in great detail the available medical, governmental and non-governmental information on which the physician's alleged actual or constructive knowledge is based. Lilly argues the allegation that the physician "never alerted Plaintiff to the possible dangers or advised Plaintiff to monitor blood sugars or undergo any examination, and/or diagnostic testing to determine if Plaintiff had sustained injuries" is conclusory but, as the plaintiff surely possesses personal knowledge of what her physician did and did not tell her, it is difficult to imagine what additional detail could be required to confirm that she has a basis for making the allegation. It is thus unsurprising that Lilly has been unable to suggest a single missing "underlying fact."

In short, Lilly plainly has not met its burden of showing that the resident physician was fraudulently joined. Thus, complete diversity is lacking and the case is due to be remanded.

## CONCLUSION

For the reasons set forth above, Lilly's motion to stay is **denied** and the plaintiff's motion to remand is **granted**. This case is **remanded** to the Circuit Court of Monroe County.

DONE and ORDERED this 5th day of June, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

urged by Lilly. The Court in *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382 (5th Cir. 2000), noted that "Plaintiff's conspiracy allegations are completely general," *id.* at 391, but the Court grounded its conclusion of fraudulent joinder on the plaintiff's failure to present evidence in response to the resident defendants' affidavits denying their participation in a conspiracy. *Id.* at 393. The Court in *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002), held only that, "considering the constraints on claims by individuals peripheral to a legal relationship between other parties [in *Great Plains*, a suit by debenture holders against the issuer's financial advisor], we conclude that plaintiffs must plead facts that, viewed favorably, demonstrate that they fall within the circumscribed class of individuals eligible to bring a claim." *Id.* at 329. Because the plaintiff had direct dealings with her physician, she is not captured by the *Great Plains* rule.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY A. BAILEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION 06-0262-WS-C |
| ELI LILLY AND COMPANY, et al., | ) ) ) |
| Defendants. | ) ) |

### ORDER

This matter is before the Court on the motion of defendant Eli Lilly and Company ("Lilly") to stay all proceedings, (Doc. 4), and on the plaintiff's motion to remand. (Doc. 11). For the reasons set forth in the Court's order resolving the parties' essentially identical motions in *Betts v. Eli Lilly and Company*, Civ. No. 06-0259-WS-B, the motion to stay is **denied** and the motion to remand is **granted**. This action is **remanded** to the Circuit Court of Mobile County.

DONE and ORDERED this 5th day of June, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| SHARLENE ETHERIDGE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION 06-0260-WS-M |
| ELI LILLY AND COMPANY, et al., | ) ) ) |
| Defendants. | ) ) |

ORDER

This matter is before the Court on the motion of defendant Eli Lilly and Company ("Lilly") to stay all proceedings, (Doc. 4), and on the plaintiff's motion to remand. (Doc. 10). For the reasons set forth in the Court's order resolving the parties' essentially identical motions in *Betts v. Eli Lilly and Company*, Civ. No. 06-0259-WS-B, the motion to stay is **denied** and the motion to remand is **granted**. This action is **remanded** to the Circuit Court of Wilcox County.

DONE and ORDERED this 5th day of June, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JANET BECK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 06-0263-WS-C |
| | ) |
| ELI LILLY AND COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter is before the Court on the motion of defendant Eli Lilly and Company ("Lilly") to stay all proceedings, (Doc. 4), and on the plaintiff's motion to remand. (Doc. 9). For the reasons set forth in the Court's order resolving the parties' essentially identical motions in *Betts v. Eli Lilly and Company*, Civ. No. 06-0259-WS-B, the motion to stay is **denied** and the motion to remand is **granted**. This action is **remanded** to the Circuit Court of Mobile County.

DONE and ORDERED this 5th day of June, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ORDERICK VINCENT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION 06-0264-WS-B |
| ELI LILLY AND COMPANY, et al., | ) ) ) |
| Defendants. | ) ) |

## ORDER

This matter is before the Court on the motion of defendant Eli Lilly and Company ("Lilly") to stay all proceedings, (Doc. 4), and on the plaintiff's motion to remand. (Doc. 13). For the reasons set forth in the Court's order resolving the parties' essentially identical motions in *Betts v. Eli Lilly and Company*, Civ. No. 06-0259-WS-B, the motion to stay is **denied** and the motion to remand is **granted**. This action is **remanded** to the Circuit Court of Dallas County.

DONE and ORDERED this 5th day of June, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE